UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:23-CV-20549

TRAVIS THOMPSON,

    Plaintiff,

vs.

FLORIDA DRAWBRIDGES, INC. d/b/a
FDI SERVICES,

    Defendant.
_____/

## **COMPLAINT**

Plaintiff Travis Thompson, through his undersigned counsel, sues Defendant, Florida Drawbridges, Inc. d/b/a FDI Services, as follows:

### *Introduction*

1. Plaintiff, Travis Thompson, worked as Mechanic Assistant Supervisor/Mechanic Lead for Defendant, Florida Drawbridges, Inc. d/b/a FDI Services, and filed this lawsuit to obtain recourse for the ways in which it treated him differently and ultimately fired him because he is an African American (Black) man who is over 40 years old.

### *Parties, Jurisdiction, and Venue*

2. **Plaintiff, Travis Thompson**, was and is a resident of Miami-Dade County, Florida, at all times material, over 18 years old, and he is *sui juris*.

3. Mr. Thompson is an African American (Black) man and a member of a class of persons protected from discrimination in employment.

4. **Defendant, Florida Drawbridges, Inc.,** is *sui juris* Florida corporation

1

authorized to conduct and conducted its work in Miami-Dade and Broward Counties.

5. Defendant was and is responsible for the conduct, acts, and omissions of its officers, managers, supervisors, and employees at all times material to this action.

6. This is an action for damages greater than $100,000, and this Court has jurisdiction over this matter.

7. This Court has original jurisdiction over Mr. Thompson's claims that arise under federal law pursuant to 28 U.S.C. §1331 and supplemental/pendent jurisdiction over Mr. Thompson's related state law claims pursuant to 28 U.S.C. §1367.

8. This District is the appropriate venue pursuant to 28 U.S.C. §1391(b)(ii) because Defendant's principal place of business is located within this District, because Mr. Thompson worked for Defendant in this District, and because most of the actions complained of occurred within this District.

### ***Common Factual Background***

9. Defendant describes itself on its website, www.floridadrawbridges.com, as "a leader in movable bridge operations, maintenance and repair."

10. Defendant further indicates on its website that it performs its work "from Portland ME to Islamorada in the Florida Keys."

11. Defendant represents that "FDI is a great place to work" with "Meaningful work, good benefits, good pay, time-off, & health benefits in a well-established industry with nationwide opportunities."

12. Defendant employed more than 25 persons in Miami-Dade and Broward Counties during the time relevant to this action.

2

13. Mr. Thompson started working for Defendant in approximately January 2004.

14. Defendant's course and practice was and remains to provide preferential treatment to its younger, non-Black employees to the detriment of its older and Black employees.

15. Defendant engaged in a pattern of discriminatory actions through its systemic differential treatment of its Black and older employees.

16. During his work for Defendant, Defendant treated Plaintiff less favorably than its non-Black (Hispanic) and its younger employees in several material ways.

17. Mr. Thompson worked his way up to the position of "Mechanical Assistant Supervisor" for Defendant.

18. In this role, Mr. Thompson still reported to non-Black (Hispanic) superiors, including superiors hired with less experience and installed in positions above him that paid more.

19. Although Defendant has a diverse workforce, that diversity is not represented in its maintenance department or its managerial/supervisory positions.

20. Defendant employs a disproportionate number of Hispanic, non-Black employees as managers and/or supervisors compared to the percentage of non-Hispanic and Black employees available for work and/or in its workforce (in Miami-Dade County).

21. Approximately three (3) years before he was fired, Defendant eliminated the Electrical Supervisor position in the area to which Mr. Thompson was assigned and tasked Mr. Thompson with performing the additional duties previously performed by the Electrical Supervisor, thereby increasing his workload.

22. Defendant ultimately terminated Plaintiff's employment while retaining employees similarly situated to Plaintiffs in all material respects, who were Hispanic (not Black), who were

3

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

younger, and had less seniority than Plaintiff.

23. Defendant replaced Mr. Thompson with Jose Martinez, a younger, non-Hispanic (Black) man who assumed Mr. Thompson's role.

24. While this replacement may have been accompanied by a change in title, the role performed remained the same – leaving Mr. Thompson's role filled by a younger, non-Black (Hispanic) employee.

25. Mr. Thompson was treated differently, discriminated against, subjected to negative treatment, and had his employment terminated because he is an older, Black (non-Hispanic), man.

26. Defendant terminated Mr. Thompson's employment on July 26, 2021, and at the time told him that he "does not fit the job description".

27. Defendant offered Mr. Thompson $3,000 in exchange for signing a separation agreement and waiving any potential claims against Defendant, but Mr. Thompson refused.

28. In subjecting Mr. Thompson to this differential treatment and to these adverse employment actions based on his being older than 40 and/or Black, Defendant intentionally discriminated against Plaintiff with respect to the terms, conditions, and privileges of employment, as well as the decision to terminate his employment.

29. All conditions precedent were performed by Mr. Thompson, occurred, or were waived by Defendant, including through the dual filing of his Charge of Discrimination with the EEOC and the FCHR. More than 180 days have elapsed since the filing of his Charge of Discrimination, and he filed this Complaint within 90 days of the EEOC's issuance of the Notice of Right to Sue. (Exhibit "A".)

4

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

30. Plaintiff agreed to pay his counsel a reasonable attorney's fee for all services rendered.

## **COUNT I – VIOLATION OF 42 U.S.C. §1981**
### (RACE DISCRIMINATION)

Plaintiff, Travis Thompson reincorporates and re-alleges all preceding paragraphs as though set forth fully herein and further alleges as follows:

31. The Reconstruction Era Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") makes it unlawful to discriminate against an employee because of race:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. §1981.

32. Mr. Thompson possessed the skills, background, and qualifications necessary to perform the duties of his position.

33. Mr. Thompson performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

34. Defendant discriminated against Mr. Thompson by not treating him the same or similar to its non-Black (Hispanic) employees as a result of his race.

35. One of the ways that Defendant treated Plaintiff differently is by not paying him as much as its non-Black employees because of his race.

36. Another way that Defendant treated Plaintiff differently is by failing to promote him because of his race and by instead either (a) promoting non-Black employees or (b) hiring non-Black employees for positions with supervisory authority over Plaintiff when the persons hired

5

and/or promoted had less experience and/or relevant knowledge than Plaintiff.

37. Ultimately, Defendant was faced with the decision about whether to terminate employees and if so, which ones.

38. Defendant replaced Mr. Thompson with Jose Martinez, a non-Hispanic (Black) man who assumed Mr. Thompson's role.

39. While this replacement may have been accompanied by a change in title, the role performed remained the same – leaving Mr. Thompson's role filled by a younger, non-Black (Hispanic) employee.

40. The discriminatory actions of Defendant against Plaintiff when considered individually or collectively, constitute an adverse employment action because of his race for purposes of Section 1981.

41. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Mr. Thompson's employment, and/or adversely affected his status as an employee.

42. As such, the disparate treatment Mr. Thompson suffered constitutes an adverse employment action for which Section 1981 provides legal recourse.

43. Defendant's actions were malicious and demonstrated a reckless indifference to the rights of Plaintiff.

44. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

45. Mr. Thompson suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

46. Pursuant to Section 1981, Mr. Thompson is entitled to recover his attorneys' fees and costs from Defendant, in addition to damages and punitive damages.

WHEREFORE Plaintiff, Travis Thompson, demands the entry of a judgment in his favor and against Defendant, Florida Drawbridges, Inc., after a trial by jury, declaring that Defendant violated 42 U.S.C. §1981, awarding him compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Plaintiff to the position to which he should be holding, and awarding him his taxable costs and attorneys' fees.

## **COUNT II – VIOLATION(S) OF TITLE VII**
**(DISPARATE TREATMENT – RACE)**

Plaintiff, Travis Thompson reincorporates and re-allege paragraphs 1 through 30 as though set forth fully herein and further alleges as follows:

23. Defendant was at all times material the "employer" of Mr. Thompson as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(1).

24. Mr. Thompson was, at all times material, an "employee" of Defendant, as the term "employee" is defined by the Civil Rights Act, 42 U.S.C. § 2000e(f).

25. Title VII of the Civil Rights Act provides as follows:

**(a) Employer practices**

It shall be an unlawful employment practice for an employer—

7

> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> **(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S. Code § 2000e–2.

26. Mr. Thompson possessed the skills, background, and qualifications necessary to perform the duties of his position.

27. Mr. Thompson performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

28. Defendant discriminated against Mr. Thompson by failing to treat him the same or similar to its non-Black (Hispanic) employees due to his race.

29. Ultimately, Defendant was faced with the decision about whether to terminate employees and if so, which ones.

30. Defendant terminated Plaintiff's employment on February 13, 2020 because of his race.

31. Defendant replaced Mr. Thompson with Jose Martinez, a younger, non-Hispanic (Black) man who assumed Mr. Thompson's role.

32. While this replacement may have been accompanied by a change in title, the role performed remained the same – leaving Mr. Thompson's role filled by a non-Black (Hispanic) employee.

33. Defendant engaged in the above-referenced unlawful "employer practices" as the

8

term is defined by 42 U.S. Code § 2000e–2 by engaging in the aforesaid actions.

34. The discriminatory actions of Defendant against Mr. Thompson when considered individually or collectively, constitute an adverse employment action because of his race for purposes of Title VII of the Civil Rights Act.

35. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiff and/or adversely affected his status as an employee.

36. As such, the disparate treatment he suffered constitutes an adverse employment action within the meaning of Title VII of the Civil Rights Act.

37. Defendant's actions were malicious and demonstrated a reckless indifference to the rights of Plaintiff pursuant to Title VII of the Civil Rights Act.

38. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

39. Mr. Thompson suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

40. Pursuant to Title VII of the Civil Rights Act Plaintiff is entitled to recover his attorneys' fees and costs from Defendant, in addition to damages and punitive damages

WHEREFORE Plaintiff, Travis Thompson, demands the entry of a judgment in his favor and against Defendant, Florida Drawbridges, Inc., after a trial by jury, declaring that Defendant violated Title VII of the Civil Rights Act in discriminating against him because of his race, awarding him compensatory damages including the loss of income in the past and in the future,

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Mr. Thompson to the position to which he should be holding, and awarding him his taxable costs and attorneys' fees.

## COUNT III – AGE DISCRIMINATION IN VIOLATION OF THE ADEA

Plaintiff, Travis Thompson reincorporates paragraphs 1 through 30 as though set forth fully herein and further alleges as follows:

73. The Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* ("ADEA"), prohibits "arbitrary age discrimination in employment".

74. Defendant was at all times material an "employer", as the term is defined by the ADEA. 29 U.S.C. §630.

75. Defendant was at all times engaged in an industry affecting commerce by its performance of commercial cleaning services for businesses, including banks and other commercial institutions.

76. Defendant at all times material employed twenty (2) or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

77. Plaintiff was at all times material an "employee" of Defendant, as the term is defined by the ADEA. 29 U.S.C. §630.

78. Defendant terminated Plaintiff's employment on February 13, 2020.

79. Plaintiff was over 40 years old when Defendant terminated his employment.

80. Plaintiff was qualified to continue to perform his work for Defendant when it terminated his employment.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

81. Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of his position.

82. Plaintiff performed his work for Defendant satisfactorily, and his was in all respects a good employee of Defendant.

83. Defendant made the decision to terminate Plaintiff's employment, to retain its substantially younger employees who held the same or similar positions, but who had not worked with Defendant for as long as Plaintiff.

84. Defendant replaced Mr. Thompson with Jose Martinez, a younger man who assumed Mr. Thompson's role.

85. While this replacement may have been accompanied by a change in title, the role performed remained the same – leaving Mr. Thompson's role filled by a younger employee.

86. Defendant improperly discharged Plaintiff from his employment because of his age in violation of the ADEA.

87. Defendant's acts of omission and/or of commission violated the ADEA, which prohibits discrimination against persons over 40 in the workplace.

88. As a direct and proximate result of Defendant's conduct as described above, Plaintiff incurred economic losses, including the loss of wages and benefits, seniority, pension, vacation, and sick leave benefits. In addition, his reputation was harmed, and he suffered mental anguish and emotional distress as a direct and proximate result of Defendant's conduct.

WHEREFORE Plaintiff, Travis Thompson demands the entry of a judgment in his favor and against Defendant, Florida Drawbridges, Inc., after a trial by jury, declaring that Defendant violated the ADEA, awarding him compensatory damages, including the loss of income in the past

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Mr. Thompson to the position to which he should be holding, and awarding him his taxable costs and attorneys' fees.

### COUNT IV – VIOLATION OF FLORIDA CIVIL RIGHTS ACT
### (DISPARATE TREATMENT – RACE)

Plaintiff, Travis Thompson reincorporates paragraphs 1 through 30 as though set forth fully herein and further alleges as follows:

89. The Florida Civil Rights Act of 1992 ("FCRA") makes it unlawful for an employer such as the Defendant to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of that individual's race.

90. Defendant was, at all times material to this action, a "person" and/or an "employer" that was and remains subject to the Florida Civil Rights Act of 1992 by employing more than 15 people for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

91. The FCRA prohibits Defendant from making employment decisions or taking personnel actions affecting the terms, conditions, and/or privileges of employment based upon race considerations.

92. The FCRA allows a prevailing employee to obtain an order prohibiting Defendant from engaging in its discriminatory practice(s) and providing affirmative relief from the effects of the practice(s), to recover back pay, compensatory damages, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages. Fla. Stat. §760.11(5).

12

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

93. Mr. Thompson possessed the skills, background, and qualifications necessary to perform the duties of his positions.

94. Mr. Thompson performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

95. Defendant discriminated against Mr. Thompson by failing to treat him the same or similar to its non-Black (Hispanic) employees due to his race.

96. One of the ways that Defendant treated Plaintiff differently is by not paying him as much as its non-Black employees because of his race.

97. Another way that Defendant treated Plaintiff differently is by failing to promote him because of his race and by instead either (a) promoting non-Black employees or (b) hiring non-Black employees for positions with supervisory authority over Plaintiff when the persons hired and/or promoted had less experience and/or relevant knowledge than Plaintiff.

98. Defendant was faced with the decision about whether to terminate employees and, if so, which ones.

99. Defendant replaced Mr. Thompson with Jose Martinez, a non-Hispanic (Black) man who assumed Mr. Thompson's role.

100. While this replacement may have been accompanied by a change in title, the role performed remained the same – leaving Mr. Thompson's role filled by a non-Black (Hispanic) employee.

101. Defendant engaged in one or more prohibited "discriminatory practice", as the term is defined by Fla. Stat. §760.02(4) and by §760.10(1) by engaging in the aforesaid actions, which is prohibited by Chapter 760, Florida Statutes.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

102. The discriminatory actions of Defendant against Mr. Thompson, when considered individually or collectively, constitute an adverse employment action because of their race for purposes of FCRA.

103. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiff and/or adversely affected his status as an employee.

104. As such, the disparate treatment he suffered constitutes an adverse employment action within the meaning of FCRA.

105. Defendant's actions were malicious and demonstrated a reckless indifference to Mr. Thompson's rights pursuant to FCRA.

106. The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

107. Mr. Thompson suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

108. Pursuant to the FCRA, Mr. Thompson is entitled to recover his attorneys' fees and costs from Defendant, in addition to damages and punitive damages.

WHEREFORE Plaintiff, Travis Thompson, demands the entry of a judgment in his favor and against Defendant, Florida Drawbridges, Inc., after a trial by jury, declaring that the Defendant violated the FCRA, awarding him compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant

14

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

from engaging in discriminatory employment practices on the basis of race, promoting Mr. Thompson to the position to which he should be holding, and awarding him his taxable costs and attorneys' fees.

### COUNT V – AGE DISCRIMINATION IN VIOLATION OF THE FCRA

Plaintiff, Travis Thompson reincorporates paragraphs 1 through 30 as though set forth fully herein and further alleges as follows:

109. The Florida Civil Rights Act, Fla. Stat. §760.01, *et seq.* ("FCRA"), prohibits "discrimination because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status".

110. Defendant at all times material employed 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and so was an "employer", as the term is defined by the FCRA. Fla. Stat. §760.02.

111. Mr. Thompson was at all times material a "person" as the term is defined by the FCRA. Fla. Stat. §760.02.

112. Mr. Thompson was an "aggrieved person" as defined by the FCRA. *Id.*

113. Mr. Thompson was over 40 years old when Defendant terminated his employment.

114. Mr. Thompson was qualified to continue to perform his work for Defendant when it terminated his employment.

115. Mr. Thompson possessed the skills, background, and qualifications necessary to perform the duties of his position.

116. Mr. Thompson performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

15

117. Defendant made the decision to terminate Mr. Thompson's employment, to retain a substantially younger employee who had not worked with Defendant for as long as Mr. Thompson.

118. Defendant improperly discharged Mr. Thompson from his employment because of his age in violation of the FCRA.

119. Defendant's acts of omission and/or of commission violated the FCRA, which prohibits discrimination against persons over 40 in the workplace.

120. As a direct and proximate result of Defendant's conduct as described above, Mr. Thompson incurred economic losses, including the loss of wages and benefits, seniority, pension, vacation, and sick leave benefits. In addition, his reputation was harmed, and he suffered mental anguish and emotional distress as a direct and proximate result of Defendant's conduct.

121. Due to the difficulties that older workers encounter in finding replacement employment, the FCRA provides for aggrieved employees such as Mr. Thompson to also recover punitive damages against their former employer – in this case, Defendant.

WHEREFORE Plaintiff, Travis Thompson, demands the entry of a judgment in his favor and against Defendant, Florida Drawbridges, Inc., after a trial by jury, declaring that Defendant violated the FCRA, awarding him compensatory damages, including the loss of income in the past and the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Mr. Thompson to the position to which he should be holding, and awarding him his taxable costs and attorneys' fees.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

## **DEMAND FOR JURY TRIAL**

Plaintiff, Travis Thompson, demands a trial by jury of all issues so triable.

Dated this 10th day of February 2023.

s/Brian H. Pollock, Esq.
Brian H. Pollock, Esq.
Fla. Bar No. 174742
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884
Fax:    305.230.4844
*Counsel for Plaintiff*

17

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*